Argued July 8, affirmed November 8, 1977

NORTHWESTERN PACIFIC INDEMNITY
COMPANY, *Respondent/Cross-Respondent,*
*v.*
CANUTT et al,
*Appellants/Cross-Respondents,*
HARTFORD ACCIDENT INDEMNITY COMPANY,
*Respondent/Cross-Appellant.*
(TC 415883, SC 24645)

570 P2d 1182

Gary M. Galton, Portland, argued the cause for appellants/cross-respondents. With him on the briefs were Alan M. Scott and Galton & Popick, Portland.

Ridgway K. Foley, Portland, argued the cause for respondent/cross-respondent. With him on the brief were Gregory W. Byrne, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Michael J. Gentry, Portland, argued the cause for respondent/cross-appellant. With him on the brief were Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, and Linde, Justices.

LENT, J.

**LENT, J.**

This is a declaratory judgment proceeding. ORS chapter 28. The proceeding arises out of a "third-party" action by an injured workman pursuant to ORS 656.154 and 656.576 et seq.[1] Defendant Steven L. Canutt[2] while in the course and scope of his employment on October 29, 1973, sustained injury to his knee when his automobile was struck by an automobile operated by one Hammond. Hammond's liability insurance carrier was defendant Cavalier Insurance Company. Canutt's own liability insurance carrier was the plaintiff herein, and as such plaintiff afforded to Canutt the insurance coverage required by ORS 743.800 to 743.835 (PIP benefits). Defendant Hartford Accident Indemnity Company was the workmen's compensation insurer for Canutt's employer. Defendants Herbert B. Galton and Leonard Popick are attorneys at law who represented Canutt in his third-party action.

The primary issue is how to divide a sum of money paid by Cavalier Insurance Company to Canutt and his attorneys as a result of the third-party claim. A secondary issue is whether the workmen's compensation insurer is entitled to recover from Canutt the part of the compensation eventually but not contemporaneously paid to him for temporary total disability for that period of time during which Canutt received lost-income benefits from plaintiff.

The primary dispute between plaintiff on the one hand and defendant Canutt and his attorneys on the

[1]Since the injury giving rise to the third party action occurred on October 29, 1973, references to the Workmen's Compensation Law and to "Personal Injury Protection" (PIP) benefits under ORS 743.800 to 743.835, are to those sections of both the Workmen's Compensation Law and the PIP laws as were in effect on the date of the injury. Care should be taken in the application of this decision in light of subsequent amendments to both parts of the statutes.

[2]Jane Doe Canutt is also a named defendant by reason of her claim arising out of the same injury, but the word Canutt as it appears in this opinion will refer only to Steven L. Canutt.

other presents the issue whether distribution of the $10,000 received from Cavalier (Hammond's policy limits) is subject to payment of plaintiff's claim under ORS 743.825 before distribution of the balance under ORS 656.593(1). In pertinent part these two statutes are as follows:

"656.593(1) * * * The proceeds of any damages recovered from [a] * * * third person by the workman * * * shall be subject to a lien of the paying agency [the workmen's compensation insurer, defendant Hartford Accident Indemnity Company] for its share of the proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"(a) Costs and attorney fees incurred shall be paid, such attorney fees in no event to exceed [25 percent] * * *.

"(b) The workman * * * shall receive at least 25 percent of the balance of such recovery.

"* * * * *"3

"743.825(1) Every insurer that transacts motor vehicle liability insurance, if its insured is or would be held legally liable for damages for injuries sustained by a person to whom [PIP] benefits * * * have been furnished by another insurer, * * * shall reimburse such other insurer * * * furnishing such benefits for the benefits so furnished in an amount not to exceed the damages so recoverable if the other insurer * * * [is] entitled to such reimbursement by the terms of * * * [its] policy or agreement. Disputes between insurers * * * as to the issues of liability for and the amount of the reimbursement required by this subsection shall be decided by arbitration."4

It was the contention of Canutt and his attorneys that the distribution scheme of ORS 656.593(1) should first

[3] Since the workmen's compensation carrier paid over $10,000 to Canutt on this claim, under the rest of ORS 656.593(1) not quoted in the text, that insurer would be entitled to the balance of the $10,000 except for plaintiff's PIP claim.

[4] We are assuming that the PIP policy included the language of entitlement required by ORS 743.825(1). We find nothing in the record to show that it was, but the entire case was tried below and presented on appeal as if, in fact, the policy contained the required language of entitlement to reimbursement.

be applied and, therefore, the attorneys would be reimbursed for $250.30 costs and would receive $2500 attorney fees. Canutt would receive $1,812.43, and the remaining $5,437.27 would be divided between plaintiff and Hartford as they might agree or as the court might rule.

Plaintiff's contention, on the other hand, was that ORS 743.825(1) should first apply and that the plaintiff should receive from the $10,000 the amount paid by plaintiff to Canutt as PIP benefits in the sum of $3,904.49 (of which $3,843.84 represented lost-income benefits). Plaintiff further contended that the remaining $6,095.51 was then to be distributed in accordance with ORS 656.593(1). This would result in reimbursement to Canutt's attorney of the sum of $250.30 costs advanced and the further sum of $1,523.88 attorney fees. Canutt would then be entitled to 25% of the remaining balance, which which would amount to $1,080.33, and the workmen's compensation carrier would receive the remaining $3,241.

The trial court found (except for a few pennies) in accordance with plaintiff's contention as we have above outlined. Canutt and his attorneys appeal from the resulting judgment, and defendant Hartford cross-appeals. We affirm.

### Dispute Between Plaintiff and Canutt and His Attorneys

Canutt and his attorneys urge that since the Workmen's Compensation Law itself provides a scheme for distribution, that scheme must be applied to the full $10,000 paid by Cavalier on the third-party claim without regard to the provisions of the insurance laws concerning PIP benefits. They draw particular attention to the fact that ORS 656.593(1) provides a complete plan for distribution of "the total proceeds." Further, they argue that ORS 656.593(1) is entitled to priority over ORS 743.825(1), because the workmen's compensation statute had been in existence for several

years prior to the enactment of the PIP benefit laws, "and it must be presumed that the Legislature, in enacting one statute, takes notice of, and gives precedence to prior statutory provisions." Insofar as the quoted matter is concerned, they cite no authority. We might well reply with equal logic that if there is a conflict between the two statutes the legislature must, by enacting the conflicting provisions, have intended to amend the earlier statute by implication. We needn't resort to either such mechanical rule of construction. Our initial inquiry is to determine whether the two statutes can be read together in such a way as to avoid any conflict at all. We find they can.

■ It is true, as contended by Canutt and his attorneys, that ORS 656.593(1) governs the distribution of "the total proceeds." Those words obviously refer back to the words "[t]he proceeds of any damages recovered." This requires us, then, to determine whether all of the $10,000 is "damages recovered."

This brings us to another part of the PIP benefits statutory scheme. ORS 743.835 provides, in pertinent part, as follows:

> "743.835 Payment of any [PIP] benefit * * * to * * * any insured * * * shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident."

The three sections of Oregon Revised Statutes are in harmony. Under ORS 743.835 the amount of damage that Canutt was entitled to recover from Hammond, and therefore Cavalier, is reduced by the amount of PIP benefits paid by plaintiff. It follows that the "damages recovered" from Hammond and Cavalier by Canutt was $6,095.51, and that sum therefore represents "the total proceeds" to be distributed under ORS 656.593(1). Under ORS 743.825, the other $3,904.49 must properly be distributed to plaintiff. In the respects already discussed, therefore, the trial court's judgment is correct.

[ 380 ]

Canutt and his attorneys alternatively contended below and in this court that from its $3,904.49 plaintiff should share the burden with Cavalier for attorney fees for services rendered by Canutt's attorneys. They urged alternatively that there was either an agreement by plaintiff to pay such fees or that their services were reasonable and necessary in effecting recovery of plaintiff's money, therefore entitling them to recover such fees under *State Farm Mut. Auto. Ins. v. Clinton,* 267 Or 653, 518 P2d 645 (1974), and *Ridenour v. Nationwide Mutual Ins.,* 273 Or 514, 541 P2d 1377 (1975). In *Clinton* we held attorney fees were recoverable for securing reimbursement to the insurer of amounts paid by it under the medical-pay provisions of its policy. In that case we simply assumed that the fees were reasonably and necessarily incurred. In *Ridenour* we noted that, absent an agreement to the contrary, an insurer is only obligated for attorney fees if it is benefitted. It is plaintiff's position here that it was not benefitted by the services of Canutt's attorneys and that it had not agreed to their representation of plaintiff to secure reimbursement. The trial court conducted an evidentiary hearing upon this issue and concluded that there was no agreement and that the attorneys were not instrumental in effecting plaintiff's recovery.

Canutt and his attorneys urge that this is a suit in equity and that this court should review this question de novo under ORS 19.125(3). A declaratory judgment proceeding may sound either at law or in equity. In this case no party actually seeks any relief of an equitable nature. Every party seeks nothing more than a judgment for money. This cause, therefore, sounds in law, and we review as in an action at law. *See Ridenour v. Nationwide Mutual Ins., supra,* and *Lindsey v. Dairyland Insurance Co.,* 278 Or 681, 565 P2d 744 (1977). Since the trial court sat at law without a jury, its findings of fact are entitled to the same weight and effect upon review as would a jury verdict. ORS 17.435.

We cannot, therefore, hold the trial court to be in error with respect to its findings unless we can affirmatively say there is no evidence to support its findings. We are precluded from weighing the evidence and must consider it in the light most favorable to the plaintiff, together with all inferences favorable to the plaintiff which could be reasonably drawn from the evidence. Oregon Constitution, Amended Article VII, Section 3, *Shepler v. Weyerhaeuser Company,* 279 Or 477, 484, 569 P2d 1040 (1977). There was evidence as follows: just over two months elapsed between the attorneys' demand upon Cavalier and the settlement of the third-party claim. The adjuster engaged by Cavalier testified that within a few days after Canutt's injury he concluded that liability rested with Cavalier's insured and so advised Cavalier. He had immediately paid Canutt's property damage claim in full. There was evidence that in the two months it took to settle the personal injury claim some delay was caused by failure of the attorneys to furnish medical reports and a list of special damages as early as they might have done. There was some correspondence between the attorneys and Cavalier but, except for one contact between an attorney and Cavalier's adjuster, there was no evidence that the claim would be seriously contested. The attorneys presented a claim for over $8,000 in special damages alone for Canutt's injuries, and Cavalier's policy limits were $10,000. The above evidence clearly supports the trial court's finding, and nothing is gained by our reviewing any evidence to the contrary.

Canutt and his attorneys make still a further contention—that he and they should be awarded attorney fees for the defense of this proceeding. They direct our attention to no agreement or contract which would entitle them to such fees. Rather, they urge that this is a suit in equity and that "It is well established in the State of Oregon that a Court sitting in equity has broad discretion in the awarding of fees and costs." We first note that we have exercised such discretion

very sparingly. *See, for example, Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975). In any event, our holding that this is an action at law disposes of that contention.

## Dispute Between Canutt and Hartford Accident Indemnity Company

■ Plaintiff had paid lost-income benefits under the PIP coverage to Canutt for the period from April 1 to October 27, 1974. Canutt had requested temporary total disability compensation benefits under the Workmen's Compensation Law from April 8, 1974, and Hartford refused to pay such compensation. Eventually, on October 24, 1974, a workmen's compensation referee ordered Hartford to pay to Canutt compensation for temporary total disability from April 8, 1974, until terminated as provided by law. Thereafter Hartford paid to Canutt $2,284.80, representing the sum he should have received for compensation for temporary total diability from April 8, 1974, to October 27, 1974. Hartford now contends that it should receive that sum back from Canutt because of the fact that he received PIP benefits for lost income during the same period of time.

ORS 743.810, with respect to PIP benefits, provides in pertinent part as follows:

"743.810 The benefits * * * with respect to:

"(1) The insured * * * shall be primary, but such benefits * * * may be reduced or eliminated * * * if the injured person is entitled to receive under the laws of this state * * * workmen's compensation benefits * * *.

"* * * * *"

The effect of this statute would have been to relieve plaintiff from paying full lost-time benefits from and after April 8, 1974, had Hartford commenced payment of compensation for temporary total disability on that date. The short answer to Hartford's contention is that plaintiff received no benefits except those to which he was entitled under his policy with plaintiff and under the Workmen's Compensation

[ 383 ]

Law. The longer answer is to point out that in a case of what amounts to conceded liability, where the claimant has over $8,000 in supportable special damages and is paid the policy limits of $10,000 in settlement of his claim, we may infer that when plaintiff recovered the full amount of lost-income benefits it paid to Canutt, this was equivalent to an out-of-pocket loss to Canutt. Moreover, had Hartford commenced the payment of compensation for temporary total disability on April 8, 1974, Canutt would not by reason of ORS 743.810 have been entitled to PIP benefits for lost income for the period from April 8, 1974, to October 27, 1974. This would have *drastically* reduced the amount of plaintiff's claim and therefore have increased the claim of Canutt and his attorneys in dollars under ORS 656.593(1). The failure of Hartford to pay the compensation for temporary total disability, which it should have paid under the Workmen's Compensation Law, has certainly not been to the benefit of Canutt. In such circumstances we find there was no "double recovery" as urged by Hartford.

Affirmed.