Argued and submitted September 21, 1999, award of attorney fees reversed; otherwise affirmed April 12, 2000

Steve BEAL,
*Respondent,*

*v.*

CITY OF GRESHAM,
a municipal corporation,
*Appellant.*

(9707-05155; CA A102250)

998 P2d 237

R. Daniel Lindahl argued the cause for appellant. With him on the briefs were Susan G. Bischoff and Bullivant Houser Bailey.

Gregory W. Byrne argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The trial court ruled, on cross-motions for summary judgment, that defendant City of Gresham had passed a resolution in violation of its city charter. It also awarded plaintiff attorney fees under *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975). We affirm the trial court's ruling on the merits but reverse its award of attorney fees.

In 1988, the Oregon Department of Transportation (ODOT) began planning for the construction of the Mt. Hood Parkway, a limited access highway that would connect Interstate 84 and US Highway 26. At least one of the proposed routes for the parkway went through the City of Gresham. Pursuant to federal law, ODOT and the city began a detailed planning process for the parkway. In 1988, the city began studying routes that the parkway might take through the city. In 1993, the city council passed a resolution endorsing Hogan Road as a route for the parkway. In 1994, the city submitted the proposed route to an advisory vote of its citizens. The measure asked: "Should Gresham support the Hogan Road route for the Mt. Hood Parkway only if it includes lids?"[1] A majority of the citizens voted in favor of the measure, and in 1995 the city council endorsed "Hogan Road with lids" as the route for the parkway.

In May 1996, the citizens of Gresham amended their city charter by initiative. The amendment, which became Section 36B of the charter, provides:

"(a)   No limited access road or highway of four lanes or more shall be constructed within city limits, nor shall the City of Gresham promote or even acquiesce in any such construction, without prior approval of the location of the road and the general design of the project by a majority of the electors of the city voting in a regular May or November election.

"(b)   Approval by the electors of the location of the road and approval of the general design of the project may be sought in separate elections.

---

[1] "Lids" refers to covers over the portions of a highway that are below grade. Lids can be built upon or landscaped and used as parks.

"(c) This measure applies to all aforementioned road or highway projects which have not secured one hundred percent of the funding necessary to complete the project or have not had final environmental impact statements approved by the time the signatures on this petition have been submitted to the City Elections Office for validation."

In August 1996, ODOT recommended the "Hogan Corridor with Lids" as the preferred route for the Mt. Hood Parkway. In May 1997, the Gresham City Council passed Resolution 2106 without getting the voters' prior approval. That resolution recites the steps that the city and other governmental bodies had taken in planning the Mt. Hood Parkway. It also recites that the city had previously endorsed Hogan Road as the preferred route for the parkway. It then sets out the following resolution:

"1. The Council supports the cooperative, timely development of an interim (10 year) traffic improvements program for East County arterials that includes, at a minimum:

"(a) Improvements to all arterial routes between I-84 and US 26 (Mt. Hood Hwy.) including north-south and east-west arterials; and

"(b) Full signal optimization system on East County arterials and major regional routes connecting to Portland; and

"(c) Improvements to State arterials, including Sandy and Powell, throughout East County cities; and

"2. Recognizing that final decisions rest with the state and region, Gresham, in cooperation with the region, will plan for and pursue funding for interim improvements through Metro, state and federal transportation improvement programs and other potential regional and local sources.

"3. The Council recognizes that the long-term ODOT recommendation for a Mt. Hood Parkway preferred corridor (Hogan with lids) confirms the alternative recommended in the 1993 and 1995 Council actions (Resolution 1703) and endorsed by the Gresham citizens in the November, 1994 general election advisory vote."

After the city counsel passed Resolution 2106, plaintiff filed this action seeking a declaration that the resolution violated Section 36B of the city charter. Plaintiff also sought his attorney fees under *Deras*. In its answer, the city denied that the resolution either promoted or acquiesced in the construction of the Mt. Hood Parkway. Alternatively, it alleged, as an affirmative defense, that the Section 36B was "unconstitutional and therefore a nullity." The city later explained that, in its view, Section 36B was not "municipal legislation" within the meaning of Article IV, section 1(5), of the Oregon Constitution.

On cross-motions for summary judgment, the trial court ruled that the city's resolution was inconsistent with Section 36B. The court also ruled that the city was barred from bringing a post-enactment challenge to Section 36B on the ground that it did not constitute municipal legislation. Alternatively, the court held that Section 36B was municipal legislation within the meaning of Article IV, section 1(5). Finally, the court awarded plaintiff his attorney fees under *Deras*.

■ On appeal, the parties raise the same issues they pursued below. We begin with the question whether Resolution 2106 violates Section 36B. *See State v. Rodriguez*, 317 Or 27, 31, 854 P2d 399 (1993) (considering nonconstitutional issues first). The city argues that its resolution did not promote or acquiesce in the construction of the Mt. Hood Parkway; it merely recognized that the route ODOT recommended was consistent with previous council recommendations. In the city's view, its resolution was nothing more than a statement of fact. We read the resolution differently. At most, the resolution impliedly reaffirms that the city prefers Hogan Road as the route for the parkway. At the least, it acquiesces in ODOT's choice of that route. Read either way, the resolution "promote[s] or * * * acquiesce[s] in" the construction of the Mt. Hood Parkway though Gresham in violation of Section 36B.[2]

---

[2] The city does not argue that the 1994 advisory vote constituted "prior approval * * * by a majority of the electors" within the meaning of Section 36B.

■     The more significant question is whether Section 36B was "municipal legislation" and thus within the authority of the voters to enact under Article IV, section 1(5), of the Oregon Constitution. *See Foster v. Clark*, 309 Or 464, 790 P2d 1 (1990). Before we reach that question, however, we first address plaintiff's argument that the city cannot bring a post-enactment challenge to Section 36B based on Article IV, section 1(5). In making that argument, plaintiff distinguishes between two types of constitutional challenges to initiated measures: (1) claims that the substance of the measure violates a constitutional provision, such as Article I, section 8, and (2) claims that the measure fails to comply with a constitutional limitation on the exercise of the initiative power, such as the single-subject rule. As plaintiff recognizes, the first class of claims—constitutional challenges to the substance of initiated measures—may not be brought until after a measure has been enacted. *See, e.g., Lowe v. Keisling*, 130 Or App 1, 15-16, 882 P2d 91 (1994), *rev dismissed* 320 Or 570 (1995). Before then, any decision would be purely advisory. *Id.* Plaintiff argues, however, that the second class of claims—claims that the measure is not legally sufficient to be put on the ballot—not only may but must be brought before the measure is enacted.

Plaintiff never identifies the legal principle that requires that the second class of claims be brought before the people vote on a measure. Rather, he extracts the principle he advances from a perceived pattern in the Supreme Court's decisions. Before explaining why those cases do not go as far as plaintiff perceives, it is perhaps helpful to put his argument in perspective. Before 1986, the general rule was that "courts could not consider constitutional challenges to initiative or referendum petitions before the voters adopted the measures." *OEA v. Roberts*, 301 Or 228, 231, 721 P2d 833 (1986). That rule applied not only to constitutional challenges to the substance of initiated measures but also to constitutional claims that the measure was not in the proper form to be submitted to the voters—claims, for example, that the measure included more than one subject. *Id.*; *Johnson v. City of Astoria*, 227 Or 585, 591-93, 363 P2d 571 (1961); *State ex rel. v. Newbry*, 189 Or 691, 693, 222 P2d 737 (1950).

The general rule was not without exceptions.[3] If, for example, an initiative petition had not received sufficient signatures, then the courts would consider pre-enactment challenges to prevent it from being placed on the ballot. *See Foster*, 309 Or at 469 (summarizing cases). As the court explained in *Foster*, the Oregon courts "will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot." *Id.* Although the cases had not always agreed on what constitutes "legal insufficiency," the *Foster* court determined that the principle included more than an insufficient number of signatures. It held:

> "Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by Or Const, Art I, § 1(5) to be placed on the ballot. This means that a court *may* inquire into whether the measure is 'municipal legislation,' because the qualifying language is used in the constitution itself. On the other hand, a court may not inquire into general questions of constitutionality, such as whether the proposed measure, if enacted, would violate some completely different portion of the constitution."

*Id.* at 471 (emphasis added).

*Foster*'s recognition that courts may consider a pre-enactment challenge based on Article IV, section 1(5), does not mean that such a challenge must be brought then. Rather, the issue in *Foster* was whether courts had the power to consider such challenges before the measure had been enacted. The court did not purport to overrule its decisions holding that post-enactment challenges are, if not mandatory, then at least permissible. *See Unlimited Progress v. Portland*, 213 Or 193, 195, 324 P2d 239 (1958).

■ To be sure, when a plaintiff brings a pre-enactment challenge seeking to prevent a measure from being placed on

---

[3] The court recognized a specific exception to the rule in *OEA v. Roberts* based on a 1968 amendment to Article IV, section 1(2)(d). 301 Or at 231. The court explained that that amendment imposed a duty on the Secretary of State to determine whether a proposed constitutional amendment contained more than one subject and thus permitted a pre-enactment challenge to the Secretary's decision. *Id.* at 235.

the ballot, the Supreme Court has required that the challenge be brought within a reasonable time. *State ex rel Keisling v. Norblad*, 317 Or 615, 628, 860 P2d 241 (1993); *State ex rel Bunn v. Roberts*, 302 Or 72, 726 P2d 925 (1986); *Ellis v. Roberts*, 302 Or 6, 725 P2d 886 (1986). That judicially created limitation is intended to ensure that the courts can give reasoned consideration to pre-enactment challenges without unduly interfering with the orderly conduct of the elections. *Ellis*, 302 Or at 13; *State ex rel Keisling v. Norblad*, 317 Or at 628. The fact, however, that the demands of the election process require that a pre-enactment challenge be brought in a timely fashion does not imply that a litigant may not raise the same claim after the measure has been enacted. Rather, those concerns point in precisely the opposite direction. That is particularly true when, as in this case, a party raises the constitutional claim not as a challenge to an election official's decision to put a measure on the ballot but as a defense to the enforcement of the initiated provision.[4]

We were careful in *Sizemore v. Keisling*, 164 Or App 80, 88, 990 P2d 351 (1999), to distinguish between a plaintiff's untimely pre-enactment challenge and the separate question whether a party could file a post-enactment challenge to an initiated law or amendment. As we noted in *Sizemore*, ORS 250.044(1)(b) provides for post-enactment challenges of initiated state statutes and amendments if they are commenced "on or after the date that the Secretary of State certifies that the challenged measure has been adopted by the electors and within 180 days after the effective date of the measure[.]" More to the point, ORS 250.044(4) provides that the limitations in ORS 250.044 "d[o] not apply to civil or criminal proceedings in which the constitutionality of a state statute or provision of the Oregon Constitution is challenged in a responsive pleading." Although ORS 250.044 applies to state rather than local initiated measures, the policy expressed in ORS 250.044 and the absence of any affirmative

---

[1] If plaintiff were correct, then a criminal defendant would be barred from raising, as a defense to prosecution, a one-subject or separate-amendment challenge to an initiated measure that limited the defendant's statutory or constitutional rights. We have, however, routinely considered such challenges even though the defendant raised them after the measure was enacted. *See, e.g., State v. Lawler*, 144 Or App 456, 464-66, 927 P2d 99 (1996), *rev den* 326 Or 390 (1998) (single-subject challenge to Measure 11).

prohibition in the cases convince us that the city may raise, as a defense to plaintiff's action, the claim that Section 36B was not municipal legislation within the meaning of Article IV, section 1(5). *Cf. Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998) (considering a post-enactment separate-amendment challenge to an initiated constitutional amendment); *State ex rel Fidanque v. Paulus*, 297 Or 711, 719, 688 P2d 1303 (1984) (holding that the plaintiffs' pre-enactment challenge was not timely in view of "the lack of any adequate reason * * * for their delay in making this challenge * * * and the potential availability of post-election challenge should Ballot Measure 8 ultimately be approved").

■■    The remaining question is whether Section 36B constitutes "municipal legislation" within the meaning of Article IV, section 1(5).[5] The general principle is well established. The constitutional limitation "municipal legislation" means that "a local initiative may deal only with legislative decisions—laws of general applicability and permanent nature—not with administrative decisions, which involve the details of implementing established policy." *State ex rel Dahlen v. Ervin*, 158 Or App 253, 255, 974 P2d 264, *rev den* 329 Or 357 (1999). The city argues that Section 36B, at least as applied in this case, is administrative because it reflects the city's nonbinding expression of opinion on whether the Mt. Hood Parkway should be built. So viewed, Section 36B does not embody a legislative decision. *See Amalgamated Transit v. Yerkovich*, 24 Or App 221, 545 P2d 1401, *rev den* (1976). Plaintiff responds that Section 36B is legislative because it both prevents the city from constructing certain kinds of roads within the city and also provides a framework for deciding what position to take when some other governmental entity seeks to build roads through the city. *See Dahlen*, 158 Or App at 255. The difference between the parties' positions reduces to the question of how Section 36B should be characterized.

---

[5] Article IV, section 1(5), provides, in part:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in and for their municipality or district."

■ On that point, Section 36B(a) contains two independent clauses. The first clause is a prohibition on city action; it prohibits the city from constructing a limited access road or highway of more than four lanes within the city limits.[6] That prohibition is clearly legislative. The second independent clause establishes a framework for making municipal recommendations on highway construction within Gresham. It sets out the procedure that the city must follow before it promotes or acquiesces in some other governmental entity's construction of a limited access road. Specifically, a majority of the citizens voting in a regularly scheduled May or November election must support the construction of the highway.

The second independent clause is not substantially different from the measure that we considered in *Dahlen*. *See* 158 Or App at 257. It establishes a procedure for determining the city's position on the construction of certain major highways within the city limits. Even if the decisions that the procedure produces are administrative, the measure establishing the procedure by which those decisions will be made is legislative. *State ex rel Allen v. Martin*, 255 Or 401 407-08, 465 P2d 228 (1970) (measure providing that the creation of future parking districts required the prior approval of the voters was legislative); *Dahlen*, 158 Or App at 257 (same principle). We agree with plaintiff that Section 36B constitutes "municipal legislation" within the meaning of Article IV, section 1(5). Not only does Resolution 2106 violate Section 36B of the Gresham City Charter, but the city's claim that Section 36B was adopted in violation of the state constitution fails.

■ The remaining question is whether plaintiff is entitled to attorney fees under *Deras v. Myers*. We recently explained that three conditions must be satisfied before a court can exercise its equitable discretion under *Deras* to award fees:

---

[6] To the extent that the first clause in Section 36B(a) also purports to prohibit the state or federal government from building a limited access road within the Gresham city limits, it may be preempted but it is still "municipal legislation." *See Dahlen*, 158 Or App at 257 (the fact that local legislation is preempted by state law does not mean that it is not municipal legislation).

"(1) The proceeding must be one in equity; (2) the requesting party must have prevailed; and (3) the requesting party 'must have been seeking to vindicat[e] an important constitutional right applying to all citizens without any gain peculiar to himself.' "

*Tanner v. OHSU*, 161 Or App 129, 133, 980 P2d 186, *rev den* 329 Or 528 (1999) (quoting *Dennehy v. City of Gresham*, 314 Or 600, 602, 841 P2d 633 (1992)). We review *de novo* the trial court's decision whether to award fees under *Deras*. *Koon v. City of Gresham*, 123 Or App 513, 517, 860 P2d 848 (1993), *rev den* 318 Or 326 (1994).

■    The city does not argue that plaintiff's action was not equitable, nor does it claim that plaintiff was not the prevailing party for the purposes of an award of attorney fees. Rather, it argues that plaintiff was seeking to enforce a city charter provision; he was not seeking to vindicate "an important constitutional right." Plaintiff responds that the city's charter is its constitution. Moreover, he argues that his effort to enforce the limits the city charter places on elected officials makes a fee award appropriate in this case. We need not decide whether a city charter is a constitution for the purposes of *Deras* to resolve this issue. Even if it is, the limitation on city government expressed in Section 36B of the city's charter is not the sort of "important constitutional right" that has given rise to an award of fees.

The court explained in *Gilbert v. Hoisting & Port. Engrs.*, 237 Or 130, 137, 384 P2d 136, 390 P2d 320 (1964), that courts have inherent equitable power to award attorney fees where "the plaintiff brings a representative suit on behalf of other members of an organization, as for example where a stockholder brings a derivative suit against a corporation." Approximately ten years later, in *Deras*, the court applied that equitable principle to a suit brought to vindicate the state constitutional right to support or oppose candidates in an election. 272 Or at 66-67. The *Deras* court explained that "the interest of the public in preservation of the individual liberties guaranteed against governmental infringement" warranted shifting the successful plaintiff's fees in that case to the public that benefitted from his suit. *Id.* at 66-67. The court was quick to make clear, however, that the equitable

authority recognized in *Deras* should not be exercised routinely. *See Northwestern Pac. Indem. v. Canutt*, 280 Or 375, 382-83, 570 P2d 1182 (1977) (noting that the court had exercised its power under *Deras* "very sparingly"). Indeed, in the 20 years after *Deras* was decided, the court did "not allo[w] another attorney fee award under the principles set out in that case." *Armatta v. Kitzhaber*, 327 Or 250, 287, 959 P2d 49 (1998). Rather, in a series of cases following *Deras*, the court identified the "prerequisites that must be fulfilled before such an award is appropriate." *See id.* (summarizing cases).[7]

As noted above, one of those prerequisites is that the plaintiff seek to vindicate an important constitutional right. *See Tanner*, 161 Or App at 133. This is not a case, however, in which plaintiff seeks to prevent the infringement of individual liberties guaranteed by the constitution. *See Deras*, 272 Or at 65. Nor is this a case in which plaintiff seeks "to defend the integrity of the amendment and initiative processes," *Armatta*, 327 Or at 289, or to advance a constitutional right to be free from discrimination, *Tanner*, 161 Or App at 134. Rather, this is a case in which plaintiff seeks to prevent the city from acquiescing in the state's plans to build a road through Gresham without first getting the electors' approval. Even if the city's charter is a "constitution" for the purposes of a fee award under *Deras*, plaintiff's action in this case does not vindicate the kind of important constitutional right that previously has warranted an award of attorney fees.

Award of attorney fees reversed; otherwise affirmed.

---

[7] The concurrence in *Armatta* reasoned that some of the court's intervening decisions interpreted *Deras* too narrowly. *See Armatta*, 327 Or at 295-97 (Durham, J., concurring). The majority, however, cited those decisions with approval and reaffirmed that three prerequisites had to be met before a court could consider whether, in the exercise of its equitable discretion, attorney fees were warranted. *See Tanner*, 161 Or App at 133.