Argued April 10, writ dismissed April 29, 1919.

# HERBRING *v.* BROWN.

### (180 Pac. 328.)

**Statutes—Referendum—Constitutional Provision—Applicability—Joint Resolution.**

1. Neither House Joint Resolution No. 1, ratifying proposed "National Prohibition Amendment," nor any other resolution of the legislature, is subject to referendum by Article IV, Sections 1, 1a, of the Constitution; such sections applying only to proposed laws.

**Statutes—Initiative and Referendum—"Bill"—"Act"—"Joint Resolution."**

2. To ascertain what is meant by the terms "bill" and "act" in Article IV, Sections 1, 1a, of the Constitution (amended), as to initiative and referendum, reference must be made to the sense in which the words were used before such amendments were passed, and, when reference is so made, it is found that the first term means a proposed law (Article IV, Section 1 [original], and Sections 18, 19; Article V, Section 15), while the second means a bill which has been enacted by the legislature into a law (Article IV, Sections 20, 21, 22, 28); a "joint resolution" being neither a bill nor an act.

**Statutes—Initiative and Referendum—Constitutional Provision—Construction.**

3. The subject matter upon which the powers given by Article IV, Sections 1, 1a, of the Constitution, may be exercised, namely, initiative laws, constitutional amendments, and acts of the legislature referred to the people, are referred to collectively as "measures" merely as a matter of convenience and not with intent to include other and different powers.

**Mandamus—Ministerial Duties.**

4. Since Article IV, Sections 1, 1a, of the Constitution, do not permit a referendum upon a House Joint Resolution, the attorney general cannot be compelled under Section 3475, L. O. L., as amended by Laws of 1917, page 230, to provide a ballot title for petitions demanding a referendum of such resolution on the theory that such act is ministerial.

Original proceeding in *mandamus* by Karl Herbring against George M. Brown, Attorney General of the State of Oregon. Demurrer to the petition was sustained and writ dismissed. WRIT DISMISSED.

For petitioner there was a brief over the names of *Mr. Theodore A. Bell* and *Messrs. Malarkey, Seabrook*

*& Dibble,* with oral arguments by *Mr. Bell, Mr. Dan J. Malarkey* and *Mr. E. B. Seabrook.*

For defendant there was a brief and an oral argument by *Mr. George M. Brown,* Attorney General of the State of Oregon, *in pro. per.*

For the Anti-Saloon League of Oregon and for the 'Anti-Saloon League of America, there was a brief submitted *amicus curiae,* over the names of *Mr. Elisha A. Baker,* of Portland, and *Mr. Wayne B. Wheeler,* of Washington, D. C.

In Banc. ·

McBRIDE, C. J.—This is a proceeding in *mandamus* arising from the following facts: During the 30th Legislative Assembly of the State of Oregon, which adjourned on February 27, 1919, there was enacted House Joint Resolution No. 1, which is a ratification of a proposed amendment of the Constitution of the United States, popularly known as the "National Prohibition Amendment."

On March 18, 1919, petitioner filed with the Secretary of State of Oregon a proposed form of petition demanding a referendum of said resolution, which petition is in form and substance as required by law.

On March 19, 1919, the Secretary of State sent to the attorney general, two copies of said petition and requested him to provide a ballot title therefor.

On March 25, 1919, after considering the matter in the meantime, the attorney general refused to provide a ballot title on the ground that in his opinion the measure was one which could not be referred to the people for two reasons: First, that a reference thereof to the people would violate Article V of the

Federal Constitution, wherein that article provides that the subject matter thereof should be passed on by the ''legislature,'' which, as there used, is synonymous with ''legislative assembly,'' and excludes the referendum. Second, that such reference to the people would violate Section 1 of Article IV of the Oregon Constitution, wherein it is provided that the people of Oregon ''also reserve power at their own option to approve or reject at the polls any *act* of the legislative assembly,'' because, it is claimed, the Resolution, sought to be referred, is not an *act* within the meaning of the above-quoted phrase.

Much of the argument here is devoted to a discussion of the constitutionality of the proposed reference.

1. We do not believe this resolution, ratifying the proposed constitutional amendment, or any other resolution of our legislature, was made the subject of referendum by Sections 1 and 1a of Article IV of our amended Constitution, which are as follows:

''Section 1. The legislative authority of the State shall be vested in a Legislative Assembly, consisting of a Senate and House of Representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the Legislative Assembly, and also reserve power at their own option to approve or reject at the polls any act of the Legislative Assembly. The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less that four months before the election at which they are to be voted upon. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the

public peace, health, or safety) either by the petition signed by five per cent of the legal voters, or by the Legislative Assembly, as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislative Assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial regular general elections, except when the Legislative Assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise. The style of all bills shall be: 'Be it enacted by the people of the State of Oregon.' This section shall not be construed to deprive any member of the Legislative Assembly of the right to introduce any measure. The whole number of votes cast for Justice of the Supreme Court at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor.

"Section 1a. The referendum may be demanded by the people against one or more items, sections, or parts of any act of the legislative assembly in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections, or parts of an act shall not delay the remainder of that act from becoming operative. The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local,

special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, in any city or town."

It seems clear to us that these sections apply only to proposed laws, and not to legislative resolutions, memorials and the like. In the initiative clause it is said:

"The people reserve to themselves power to propose *laws* and *amendments to the Constitution*, and to enact or reject the same at the polls."

The reservation clause reads:

"And also reserve power at their own option to approve or reject at the polls any *act* of the legislative assembly."

In the provision for referendum we find a direction that,

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which *passed the bill* on which the referendum was demanded."

In Section 1a we find the provision, that—

"The referendum may be demanded by the people against one or more items, sections, or parts of any *act* of the legislative assembly, in the same manner in which such power may be exercised against a *complete act.*"

2. To ascertain what is meant by the terms "bill" and "act," as used in the amendments quoted above, we

must refer to the sense in which they were used in the Constitution before the initiative and referendum amendments were passed. The word "bill" occurs in Sections 2 of Article IV of the original Constitution, where it is said, "The style of every bill shall be 'Be it enacted by the legislative assembly of the State of Oregon,' and no laws shall be enacted except by bill," thus indicating that a bill is a proposed law; a document in the form of a law presented to the legislature for enactment.

The same word is used in Sections 18 and 19 of Article IV, and Section 15 of Article V, and in the same sense as above indicated.

We come now to the term "act," as used in the Constitution. In Section 20 of Article IV we find the following:

"Every *act* shall contain but one subject and matters properly connected therewith, which subject shall be embraced in the title. But if any subject shall be embraced in an *act* which shall not be embraced in the title, such *act* shall be void, only as to so much thereof as shall not be expressed in the title."

In Section 21, Article IV, the following occurs:

"Every *act* and joint resolution shall be plainly worded," etc.

In Section 22 of the same Article, it is ordained:

"No *act* shall ever be revised or amended by mere reference to its title," etc.

And in Section 28 it is prescribed:

"No *act* shall take effect until ninety days from the end of the session," etc.

No one can read these excerpts without at once arriving at the conclusion that, as referred to in the

Constitution, the term "bill" imports a document in the form of a law, presented to the legislature for enactment, and that the term "act," as there used, means a bill which has been enacted by the legislature into a law. That the framers of the Constitution intended to preserve the well-known distinction between "acts" and "joint resolutions," is indicated in Section 21, *supra,* wherein it is required that *acts* and *joint resolutions* shall be plainly worded.

The initiative and referendum amendments were passed and should be construed in the light of the construction put upon the terms "bill" and "act," by the instrument they proposed to amend, and taking this view it must be held that as a joint resolution is neither a bill nor an act, it is not subject to the referendum.

3. Counsel for petitioner suggest that the term "measures" used in the amendment, enlarges the scope of the powers reserved beyond the express reservation, but this is evidently not the purpose with which that term is employed. As before observed, there are two powers reserved: (1) The power to propose laws and amendments to the Constitution, and to enact or reject them at the polls, and (2) the power to enact or reject at the polls any act of the legislative assembly. The subject matter upon which these powers may be exercised, namely: Initiative laws, constitutional amendments, and acts of the legislature referred to the people, are thereafter referred to collectively as "measures," merely as a matter of convenience and to avoid frequent enumeration of the powers reserved, and not with the intent to include other and different powers within the scope of the amendment. Had it been the intent of the framers of the referendum

amendment to go beyond these express reservations, it would have been easy and natural for them to have said so.

To give the amendment the effect contended for by petitioners, we would have to read into the reservation the words "And resolutions," making it read, "The people reserve to themselves power * * to approve or reject at the polls any act (or joint resolution) of the legislative assembly," and where the amendment requires that the referendum petition shall be filed within ninety days "after the final adjournment of the legislature which passed the bill," we would be required to judicially amend the section so as to make it read, "within ninety days after the final adjournment of the legislature which passed the bill (or joint resolution)."

We are not prepared to go into the business of amending the Constitution to meet supposed hardships, and must hold that the referendum cannot be invoked in the present instance.

Under an amendment to the Constitution of California, in some particulars copied from that here discussed, and in all necessary particulars the same in substance, the Supreme Court of that state has held that the referendum can only be invoked against statutes and not against joint resolutions: *Hopping* v. *Council of City of Richmond*, 170 Cal. 605 (150 Pac. 977).

4. It is further urged that, even conceding that the resolution is not one which our amended Constitution permits to be placed upon the ballot, the attorney general is not the person or official who is entitled to raise the question; that his duties being purely ministerial, he is required to place a ballot title upon any petition

filed with the Secretary of State and transmitted to him, as required by Section 3475, L. O. L., as amended by Chapter 176, Laws of 1917.

It may well be contended that if a matter proposed for reference to the electorate is within that class of subjects, upon which the Constitution permits a referendum, to wit, acts passed by the legislature, the attorney general has no authority to pass upon the constitutionality of the procedure. This would certainly be a plausible contention in the case of petitions under the initiative provisions of the section now being considered. He probably could not be heard to say, "The law you propose to initiate would be unconstitutional if passed, therefore I will not give you a ballot title," but such a case is not before us. We have here presented a case where it is proposed to put upon the ballot for reference a proceeding by the legislature for which the Constitution has made no provision, and which does not belong to a class of subjects that can be referred under any circumstances. To hold that the attorney general must prepare a ballot title under such circumstances, would place him at the beck and call of any restless person who might desire to refer any subject, for the purpose of obtaining a straw vote upon it, from a joint memorial petitioning Congress to improve a harbor up to the action of the Peace Conference upon the covenant of the League of Nations.

The act, of which the section referred to is a part, does not contemplate any such contingency, and the opening paragraph of the first section is itself a legislative interpretation of the scope of the constitutional amendment, and reads as follows:

"The following shall be substantially the form of petition for the referendum to the people, on any *act* passed by the Legislative Assembly of the State of Oregon, or by a City Council": Section 3470, L. O. L.

It is a petition to refer an *act* that must be filed with the Secretary of State, and it is to a petition for an *act* that the attorney general is required to affix a ballot title.

The form of petition given in the section last referred to, is even more explicit. The descriptive portion of the form prescribed for a petition to refer, is as follows:

"We, the undersigned citizens and legal voters of the State of Oregon (and the district of ——, County of ——, or city of ——, as the case may be) respectfully order that the Senate (or House) bill No. ——, entitled (title of act and if the petition is against less than the whole act, then set forth here the part or parts on which the referendum is sought) passed by the Legislative Assembly of the State of Oregon at the regular (special) session of the Legislative Assembly, shall be referred to the people of the state," etc.

The section of the statute requiring the attorney general to affix a ballot title to petitions for a referendum, has reference to petitions regarding acts, that is: *Laws* passed by the legislature; as to these he is compelled to prepare ballot titles, but there is no statute requiring him to prepare such titles for any other.

This view renders it unnecessary to consider the other questions raised in the argument.

The demurrer will be sustained and the writ dismissed.    WRIT DISMISSED.