Argued and submitted March 6, decision of Court of Appeals and judgment of circuit court affirmed October 8, 2020

Richard HARISAY,
Charles Montgomery, and Stephen Bintliff,
Chief Petitioners and Electors of the State of Oregon,
*Petitioners on Review,*

*v.*

Bev CLARNO,
Secretary of State of Oregon,
*Respondent on Review.*

(CC 14C21951) (CA A158925) (SC S066576)

474 P3d 378

Plaintiffs brought a civil action against the Secretary of State to require the secretary to certify an initiative petition that purported to exercise the people's right "to propose laws" by initiative under Article IV, section 1(2)(a), of the Oregon Constitution, for the purposes of calling on Congress to convene a federal constitutional convention under Article V of the United States Constitution. The circuit court granted judgment on the pleadings for the secretary, and the Court of Appeals affirmed. Plaintiffs sought review. *Held*: (1) Matter remained justiciable despite ballot deadlines having passed; (2) courts have authority to review whether petition would constitute "law" under people's authority "to propose laws" under Article IV, section 1(2)(a), of the Oregon Constitution; (3) voters never intended the initiative power of Article IV, section 1(2)(a), to be used for anything other than changing Oregon law; (4) petition did not seek any change in Oregon law, its sole purpose was to change federal constitutional law, through the mechanism of asking Congress to call a federal constitutional convention; and (5) therefore, the Secretary of State correctly declined to certify the petition.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Daniel Meek, Portland, argued the cause and filed the briefs for petitioners on review.

Shannon T. Reel, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On appeal from Marion County Circuit Court, David Leith, Judge. 295 Or App 493, 434 P3d 442 (2018).

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Baldwin, Senior Judge, Justice pro tempore.**

**BALDWIN, S. J.**

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** Garrett, J., did not participate in the consideration or decision of this case.

**BALDWIN, S. J.**

This case requires the court to address an issue of first impression: Does the initiative power provided for in Article IV, section 1(2)(a), of the Oregon Constitution extend to the people applying to Congress for a constitutional convention to amend provisions of the United States Constitution under Article V of that document? We conclude that the Oregon voters who adopted the initiative power did not intend that power to extend beyond state lawmaking. Accordingly, we hold that Article IV, section 1(2)(a), does not authorize the people to directly apply for a federal constitutional convention.

## I.   FACTS

Article IV, section 1, of the Oregon Constitution provides, in part:

"(1)   The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2)(a)   The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly."

Plaintiffs in this case had submitted Initiative Petition 2016-005 (IP 5) to the Secretary of State so that it could be certified in time for the 2016 ballot. Section (1) of IP 5 provided that the people "call for an Article V Convention by enacting into law this Application, in accordance with Article V of the U.S. Constitution," for purposes of considering whether to amend the United States Constitution to allow greater regulation of corporations and other artificial legal entities and greater regulation of money used for political purposes. Section (2) added that the call for such a convention is continuing and does not terminate by the passage of time. Section (3) provided for copies of the call to be sent to various persons. And section (4) stated that the call "shall be codified in Title 17 of Oregon Revised Statutes." (The full text of IP 5 is attached as an Appendix.)

Under the Oregon Administrative Rules, the secretary reviews a proposed initiative petition to "determine if it complies with the procedural requirements established in the Oregon Constitution for initiative petitions." OAR 165-014-0028(1). The secretary does not, however, review the proposed initiative petition for "substantive constitutional or legal sufficiency." *Id*.

In this case, the secretary (at that time, Kate Brown) refused to certify IP 5 on the ground that it failed to meet the procedural requirements established by the Oregon Constitution. Specifically, the secretary explained that she "ha[d] been advised that a court review of [IP 5] would probably determine that it does not propose a law within the meaning of Article IV, section 1, of the Oregon Constitution and therefore may not legally be adopted through the initiative process."

Plaintiffs then filed this action in circuit court. Among other things, they sought a declaratory judgment that the secretary was required to certify IP 5. The secretary moved for judgment on the pleadings, which the trial court granted. The trial court concluded that the "exercise of the legislature's authority under Article V of the federal constitution" was not subject to an initiative to apply for a federal constitutional convention, because it was not a "law."

Plaintiffs appealed to the Court of Appeals, which affirmed. *Harisay v. Atkins*, 295 Or App 493, 434 P3d 442 (2018).

That court began with a procedural question. The court noted that the deadline for IP 5 to be included on the 2016 ballot had passed, which rendered the matter moot. *Id*. at 495. The court nevertheless concluded that the matter remained justiciable under Oregon's statutory version of the "capable of repetition, yet evading review" doctrine, ORS 14.175, and it exercised its discretion to decide the case. 295 Or App at 496-97.

Turning to the merits, the court concluded that the issue was whether IP 5 proposed a "law" under Article IV, section 1(2)(a). *Id*. at 497. Noting that the initiative and

referendum powers had been adopted in 1902, the court considered dictionary definitions of "law" from that period. *Id*. at 498-500. The court also reviewed cases interpreting Article IV, section 1. *Id*. at 500-01. Based on those authorities, the court concluded that the initiative power reached only those measures that will "establish new legal rules regulating conduct in the state of Oregon, typically of a permanent and generally applicable nature." *Id*. at 502 (footnote omitted). The court concluded that IP 5 failed both parts of that test. It did not regulate conduct in the state of Oregon, and it did not involve a rule of conduct. *Id*. at 502-03. Rejecting plaintiffs' other arguments without discussion, *id*. at 494, the court affirmed the trial court ruling.[1]

Plaintiffs sought review, which we allowed.

## II.  DISCUSSION

### A.  *Mootness*

We begin, as a preliminary matter, with the question of mootness. The parties do not dispute that the matter is in fact moot. Nor do the parties contest the Court of Appeals's holding that the case remains justiciable under ORS 14.175.[2] We agree with the Court of Appeals's determination that it is, and we do not revisit its exercise of discretion to consider the merits.

### B.  *Scope of Review*

We next turn to the scope of review for the issues presented in this case. As noted, the scope of review for

---

[1] Plaintiffs renew those other arguments before this court. As did the Court of Appeals, we also decline to address them.

[2] ORS 14.175 provides:

"In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)  The party had standing to commence the action;

"(2)  The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)  The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

proposed initiatives is limited: The secretary reviews proposed initiatives for compliance with procedural requirements under the Oregon Constitution, not substantive validity or constitutionality. OAR 165-014-0028(1). That restriction dates back to at least *State ex rel. Carson v. Kozer*, 126 Or 641, 270 P 513 (1928), where this court stated:

> "Under the settled procedure in this state there is no power inherent in the courts to determine whether or not a proposed law before it has been enacted is constitutional or unconstitutional. Neither the Constitution itself nor any statute gives to the courts any such power. The courts of this state never attempted to exercise such a power. Any interference by the courts or by any executive officer of the courts with the enactment of any law, constitutional or unconstitutional, either while the proposed measure is pending before the legislative assembly or if it is an initiative measure where all statutory requirements have been complied with, would in itself be a violation of the Constitution[.]"

*Id*. at 646-47.

At the same time, however, the secretary does review a proposed initiative for whether it complies with the constitutional requirements to be an initiative under Article IV, section 1. As this court has explained:

> "*** Oregon courts have inquired into whether matters extraneous to the language of the measure itself disqualify the measure from the ballot. This is most obviously true of the requirement that an initiative receive enough qualifying signatures, *** but the principle involved extends further. Despite compliance with proper procedures, courts will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot."

*Foster v. Clark*, 309 Or 464, 469, 790 P2d 1 (1990). *Foster*'s summary of the relevant rule—rendered in the context of the initiative and referendum for "municipal legislation" under Article IV, section 1(5)—was:

> "Courts have jurisdiction and authority to determine whether a proposed initiative or referendum measure is one of the type authorized by [Article IV, section 1(5), of the Oregon Constitution] to be placed on the ballot."

*Id*. at 471.

Numerous cases have applied that scope of review. In *Foster*, for example, the court concluded that a proposed initiative for a municipality could be reviewed to determine whether it constituted "municipal legislation" as that term is used in Article IV, section 1(5). 309 Or at 471; *see also Boytano v. Fritz*, 321 Or 498, 501-02, 901 P2d 835 (1995) (same). In *Herbring v. Brown*, 92 Or 176, 180 P 328 (1919), this court concluded that it could review a proposed referendum on the legislature's ratification of what became the Eighteenth Amendment (prohibition), at least to the extent of determining that the proposal did not qualify as a referendum under Article IV, section 1, because the "referendum" authority was limited to the repeal of statutes, and the legislature had not ratified the amendment by act. *Id*. at 182, 184 (distinguishing review for questions of substantive constitutionality should the measure be passed). In *Holmes v. Appling*, 237 Or 546, 392 P2d 636 (1964), this court concluded that a proposed initiative should not be placed on the ballot because it was either a new constitution or a constitutional revision, and thus did not qualify as an "amendment" under Article IV, section 1. *Id*. at 552-55 (explaining that judicial review of the nature of the initiative was permissible).

In this case, the secretary maintains that IP 5 is not a "law" or an amendment to the state constitution, and so it is not within the scope of the authority reserved to the people by Article IV, section 1(2)(a). Plaintiffs maintain that IP 5 is a "law" under Article IV, section 1(2)(a). They contend that the secretary and the Court of Appeals both based their conclusions on an improper (and, in their view, incorrect) substantive determination that IP 5 would not be effective to apply to Congress for a federal constitutional convention.[3]

As did the Court of Appeals, we conclude that whether IP 5 is authorized under Article IV, section 1, is properly before us. We now turn to that question.

---

[3] Plaintiffs also assert that, even if IP 5 does not qualify as a "law," it could go forward as a "proposition or question." *See* ORS 250.005(3)(e); ORS 254.005(6)(e) (both defining "measure" to include a "proposition or question"). The proposed initiative here cannot be construed as a mere proposition or question. On its face, IP 5 claims to "enact into law" the application for a federal constitutional convention, and it directs that it be codified into the Oregon Revised Statutes. We decline to render any opinion on whether a version of the initiative, modified to delete any suggestion that it was being enacted into law, might be permissible.

C.  *Does the initiative power extend beyond state lawmaking?*

   The fundamental problem with plaintiffs' position, as we will explain, is that IP 5 is devoted to the change of federal law, not state law. IP 5 seeks a federal constitutional amendment by taking a step—asking Congress for a federal constitutional convention—that is found only in Article V of the United States Constitution. IP 5 does not have as its objective any change to state law at all. The initiative power under Article IV, section 1(2)(a), of the Oregon Constitution, however, grants only authority to enact state laws and amendments to the Oregon Constitution. While we agree with the Court of Appeals's ultimate determination, we do so for different reasons; we do not rely on the Court of Appeals's narrow focus on what constitutes a "law."

   To determine whether IP 5 proposes a "law" within the meaning of Article IV, section 1(2)(a), of the Oregon Constitution, we must consider the scope and limits of the initiative power under Article IV, section 1, of the Oregon Constitution. Our methodology for interpreting provisions of the Oregon Constitution was summarized by this court's decision in *Couey v. Atkins*, 357 Or 460, 490-91, 355 P3d 866 (2015):

> "[W]e examine the text, in its historical context and in light of relevant case law, to determine the meaning of the provision at issue most likely understood by those who adopted it, with the ultimate objective of identifying relevant underlying principles that may inform our application of the constitutional text to modern circumstances."

*Id*. (internal quotation marks and citation omitted).[4] In the case of the initiative and referendum power, we consider "the meaning understood by the voters" when they adopted that power. *See State v. Lane*, 357 Or 619, 625, 355 P3d 914 (2015).

---

 [4]  Prior to *Couey*, this court's cases had used two different frameworks for constitutional analysis: one for provisions of the original Oregon Constitution, see *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992), and one for later amendments, see *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560, 871 P2d 106 (1994). *See Couey*, 357 Or at 490-91 (discussing cases). *Couey* concluded that the *Priest* formulation now applies to all provisions of the Oregon Constitution. *Id.*

We begin with the text of Article IV, section 1. As it exists today, it provides, in relevant part:

> "(1)   The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.
>
> "(2)(a)   The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly."

Or Const, Art IV, § 1(1), (2)(a).

The voters adopted Article IV, section 1, in its present form in 1968. *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 60, 11 P3d 228 (2000). The initiative power was first adopted, however, in 1902. *Id*. at 60-61.[5] As originally adopted by the people, Article IV, section 1, provided, in part:

> "The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to

---

[5] Oregon was not the first state to adopt the initiative, but it appears that the preceding states had little or no influence on how Oregon voters would have understood the initiative power. As Judge Schuman noted in his law review article on the adoption of the initiative in Oregon:

> "Although South Dakota (in 1898) and Utah (in 1900) put initiative and referendum provisions in place before Oregon (1902), the first extended debates about these procedures took place in Oregon, and the Oregon legislature originally approved them in 1899. Direct democracy, therefore, was commonly referred to as the 'Oregon System.'"

David Schuman, *The Origin of State Constitutional Direct Democracy: William Simon U'Ren and "The Oregon System,"* 67 Temple L Rev 947, 948 n 7 (1994). A contemporaneous treatise confirms that Oregon's movement to adopt the initiative and referendum had begun in 1892, years before either South Dakota or Utah had adopted them. *See* James D. Barnett, *The Operation of the Initiative, Referendum, and Recall in Oregon* 3 (1915). The inspiration for Oregon's initiative and referendum power appears to have come from Switzerland rather than those other states. *See* Schuman, 67 Temple L Rev at 950.

Another law review article gives a fairly extensive discussion of the circumstances surrounding the adoption of the initiative in California and Oregon (in that order, although Oregon predated California). Nathaniel A. Persily, *The Peculiar Geography of Direct Democracy: Why the Initiative, Referendum and Recall Developed in the American West*, 2 Mich L & Pol'y Rev 11, 29-32 (1997). The article has essentially no discussion of adoption in either South Dakota or Utah, beyond noting the mere fact that they did.

> enact or reject the same at the polls, independent of the legislative assembly \*\*\*. The first power reserved by the people is the initiative \*\*\*. \*\*\* The style of all bills shall be: 'Be it enacted by the people of the state of Oregon.'"

Or Const, Art IV, § 1 (1902), quoted in *Stranahan*, 331 Or at 60. Although the 1968 amendment made some changes to the number of required signatures and imposed a single subject requirement, it "did not purport to alter the nature of the people's power of initiative and referendum." *Stranahan*, 331 Or at 61.

The text shows that the initiative power, when it authorized the people "to propose laws," meant Oregon laws. The Oregon Constitution gives the legislature and the people authority to legislate for the State of Oregon. The Oregon Constitution does not purport to claim the authority to enact federal laws, and in the rare instances when it refers to federal laws, it does so expressly. *E.g.*, Or Const, Art IV, § 32 (authorizing the legislature to set income taxes "by reference to any provision of the laws of the United States"); Or Const, Art XV, § 10(14) (provision relating to property "forfeited under the law of this State or the United States").

Similarly, the text also shows that the initiative power, when it authorized the people "to propose \*\*\* amendments to the Constitution," meant only amendments to the *Oregon* Constitution. When the Oregon Constitution uses the word "constitution" without additional qualifiers, it refers to itself. Thus, the preamble states that "the people of the State of Oregon \*\*\* ordain this Constitution." Or Const, preamble. When the Oregon Constitution does refer to the United States Constitution, it does so expressly. *E.g.*, Or Const, Art IV, § 31 (legislators must take oath to "support the Constitution of the United States, and the Constitution of the State of Oregon"); Or Const, Art VII (Amended), § 7 (Supreme Court justices must take oath to "support the constitution of the United States, and the constitution of the State of Oregon"); Or Const, Art XV, § 3 (every person taking office "under this Constitution" must take oath to "support the Constitution of the United States, and of this State").

Contextually, the Oregon Constitution was adopted against the background of the United States Constitution.

The framers of the Oregon Constitution—and the voters who adopted the initiative power in 1902 and then revised it in 1968—understood that the United States Constitution is supreme over any contrary provision of the Oregon Constitution. US Const, Art VI, cl 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

We are unaware of any history that would suggest the voters intended to authorize any lawmaking beyond Oregon laws.

As applied here, the matter is straightforward. The voters never intended the initiative power of Article IV, section 1(2)(a), to be used for anything other than changing Oregon law.[6] IP 5 does not seek any change in Oregon law. Its sole purpose is to change federal constitutional law, through the mechanism of asking Congress to call a federal constitutional convention. As such, IP 5 is not within the scope of the people's power "to propose laws" under Article IV, section 1, of the Oregon Constitution.[7]

The Oklahoma Supreme Court reached a similar conclusion regarding the operation of that state's initiative process. Rejecting a proposed initiative intended to create a test case for the United States Supreme Court that might have resulted in a revised interpretation of the United States Constitution, the Oklahoma Supreme Court stated:

---

[6] The "unfettered right to propose laws and constitutional amendments by initiative petition," *Stranahan*, 331 Or at 64, thus means an unfettered right to propose only Oregon laws and Oregon constitutional amendments.

[7] Plaintiffs argue that IP 5 constitutes state lawmaking because section (3) directs that copies will be sent to various persons, and section (4) directs its codification in the Oregon Revised Statutes.

That argument places form over substance. Codification and copies are not ends in themselves. Sections (3) and (4) exist solely to support the single purpose of IP 5 found in sections (1) and (2): to formally ask Congress, under Article V of the United States Constitution, to call a federal constitutional convention. Remove sections (1) and (2), and sections (3) and (4) are empty actions that have no purpose. An initiative that is not lawmaking cannot be made into "law" by the mere act of directing that it be written into the Oregon Revised Statutes or sent to certain people.

"The initiative process guaranteed to our citizens by the Oklahoma Constitution was never intended to be a vehicle for amending the United States Constitution—nor can it serve that function in our system of government." *In re Initiative Petition No. 349 State Question No. 642*, 1992 OK 122, ¶ 29, 838 P2d 1, 10-11 (1992), *cert den*, 506 US 1071 (1993); *see also In re Initiative Petition No. 364*, 1996 OK 129, ¶ 30, 930 P2d 186, 195 (1996) ("the people's legislative power as defined in article 5, section 1, of the Oklahoma Constitution does not include the power to use the initiative process to attempt to change federal constitutional law").

We should add that the people and the legislature share only the power to make laws under the Oregon Constitution. Not every action taken by the legislature involves the making of a law, and the people do not share the other powers of the legislature. *See, e.g.*, Or Const, Art IV, § 11 ("Each house * * * shall choose its own officers, judge of the election, qualifications, and returns of its own members; determine its own rules of proceeding, and sit upon its own adjournments * * *."); *id*. § 14 ("Each house shall adopt rules to implement the requirement" that its deliberations be open); *id*. § 15 ("Either house may punish its members for disorderly behavior, and may with the concurrence of two thirds, expel a member[.]"). The Oregon Constitution expressly distinguishes bills and acts from joint resolutions. *See* Or Const, Art IV, § 19 (requirements for vote on "every bill or joint resolution"); Or Const, Art IV, § 21 (requiring plain wording of "[e]very act, and joint resolution"); Or Const, Art IV, § 25 (requiring majority vote of both houses "to pass every bill or Joint resolution" and that "[a]ll bills, and Joint resolutions passed" be signed by presiding officers of each house). This court's decision in *Herbring*, 92 Or 176, exemplifies that point: The legislature had ratified the Eighteenth Amendment to the United States Constitution by joint resolution. This court held that a joint resolution was not a law, and because it was not a law, the matter was beyond the reach of the referendum power. *See* 92 Or at 182 ("as a joint resolution is neither a bill nor an act, it is not subject to the referendum").

Similarly, in *American Federation of Labor v. Eu*, 36 Cal 3d 687, 206 Cal Rptr 89, 686 P2d 609 (1984), the Supreme Court of California was presented with the question of whether an initiative intended to force the California legislature to call for a federal constitutional convention regarding a balanced budget amendment was a proposal to adopt a "statute" within the initiative power of article II of the California Constitution. The court held that the initiative, mandating that the California legislature call for a federal constitutional convention on penalty of stopping the pay of all legislators until it was passed, exceeded the scope of the initiative power because the measure did not adopt a statute or enact a law. 36 Cal 3d at 694, 206 Cal Rptr at 93, 686 P2d at 613. In resolving the question, the court acknowledged its duty to protect the people's rights of initiative and referendum but concluded that those rights were limited:

> "Even under the most liberal interpretation, however, the reserved powers of initiative and referendum do not encompass all possible actions of a legislative body. Those powers are limited, under article II, to the adoption or rejection of 'statutes.'"

36 Cal 3d at 708, 206 Cal Rptr at 103, 686 P2d at 623.

Accordingly, we conclude that the Secretary of State correctly refused to certify IP 5 on the ground that it does not propose a law within the meaning of Article IV, section 1, of the Oregon Constitution, and so cannot be adopted through the initiative process. *See Herbring*, 92 Or at 184 ("We have here presented a case where it is proposed to put upon the ballot for reference a proceeding by the legislature for which the Constitution has made no provision, and which does not belong to a class of subjects that can be referred under any circumstances.").

D.   *Federal Law Context*

The parties have not asked this court to reach any federal law issues to determine this case. However, we think it is important for us to consider federal law as context for the decision we do reach today. As we have already noted and

explained, the Oregon Constitution was adopted within the context of the United States Constitution, which is acknowledged to be supreme. Our conclusion that the state initiative power does not reach attempts to modify the federal constitution implies that we should consider what, exactly, the federal constitution itself requires for its amendment. In doing so, we do not finally resolve the federal law issue. We note only that existing United States Supreme Court precedent supports our independent conclusion under the Oregon Constitution that the state initiative power does not reach applications for a federal constitutional convention, and that the secretary accordingly acted properly under state law in declining to certify IP 5.

In this case, plaintiffs ultimately seek to amend the federal constitution through one of the mechanisms prescribed by Article V of the United States Constitution. Article V provides, in part:

> "The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either case, shall be valid to all Intents and Purposes, as Part of the Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress[.]"

As can be seen, there are two ways by which a federal constitutional amendment can be proposed. The two bodies who can propose such an amendment are:

(1)  Congress; or

(2)  a federal constitutional convention called by Congress after application by "the Legislatures of two thirds of the several States."

As we will explain, it is doubtful that IP 5 conforms to Article V, which provides for applications by the "Legislatures" of two-thirds of the states, not directly by the people through the initiative power. We think that the interpretation of Article IV, section 1, of the Oregon Constitution

that we reach today does comport with Article V of the United States Constitution.[8]

The United States Supreme Court has held that the second reference to "Legislatures" in Article V pertaining to the ratification of proposed amendments does mean only the legislative bodies of the states—and not the people acting directly in the exercise of the initiative and referendum power. *Hawke v. Smith No. 1*, 253 US 221, 40 S Ct 495, 64 L Ed 871 (1920). The issue in *Hawke No. 1* was whether the voters of the State of Ohio could hold a referendum on the state legislature's ratification of what became the Eighteenth Amendment (prohibition). The plaintiff had brought an action in state court to enjoin the Ohio Secretary of State from placing the matter on the ballot. The trial court had granted a demurrer against plaintiff, and the Ohio Supreme Court had affirmed. On *certiorari*, the United States Supreme Court reversed.

First, the Court noted that the argument in favor of Ohio's referendum by the people rested on the assertion that ratification requires "legislative action" by the state. 253 US at 229. The Court rejected that claim:

> "[R]atification by a State of a constitutional amendment *is not an act of legislation* within the proper sense of the word. It is but the expression of the assent of the State to a proposed amendment."

*Id*. at 229 (emphasis added).

---

[8] The Court of Appeals had noted that as a possible alternate basis for its hold that IP 5 did not constitute a "law" under Article IV, section 1. The court explained that a United States Supreme Court case brought into question whether the proposed initiative would be effective as an application for a federal constitutional convention under Article V of the United States Constitution. The court stated:

> "In *Hawke v. Smith [No. 1]*, 253 US 221, 227, 40 S Ct 495, 64 L Ed 871 (1920), the United States Supreme Court held that the term 'Legislatures,' in its second iteration in Article V regarding the ratification of proposed amendments, refers to only legislative bodies of states rather than citizens acting through the initiative and referendum power."

295 Or App at 502 n 5. The Court of Appeals did "not further consider that issue," however, because it concluded that IP 5 did not constitute a "law" under the Oregon Constitution. *Id*.

	Next, the Court discussed its analogous holding in *Hollingsworth v. Virginia*, 3 US (3 Dall) 378, 381 n *, 1 L Ed 644 (1798), in which the Court had held that the President has no ability to veto a proposed constitutional amendment drafted by Congress. 253 US at 229-30. *Hawke No. 1* reiterated that Congress did not exercise the legislative power when it drafted and referred a constitutional amendment to the states, and by analogy, that the states did not exercise legislative power in deciding whether to ratify the amendment.

	The Court then explained that the authority to act under Article V derived purely from authority granted by the federal constitution, not from any state lawmaking power:

> "It is true that the power to legislate in the enactment of the laws of a State is derived from the people of the State. But *the power to ratify a proposed amendment to the Federal Constitution has its source in the Federal Constitution*. The act of ratification by the State derives its authority from the Federal Constitution to which the State and its people have alike assented."

253 US at 230 (emphasis added).

	Finally, the Court distinguished a prior holding that the state referendum powers could constitutionally be exercised in connection with Article I, section 4, of the United States Constitution, which authorizes the state "Legislature[s]" to regulate "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." 253 US at 230-31 (discussing *Ohio ex rel. Davis v. Hildebrant*, 241 US 565, 36 S Ct 708, 60 L Ed 1172 (1916)). The Court explained again that state ratification under Article V is not legislative action:

> "Article I, § 4, plainly gives authority to the State to legislate within the limitations therein named. Such legislative action is entirely different from the requirement of the Constitution as to the expression of assent or dissent to a proposed amendment to the Constitution. *In such expression no legislative action is authorized or required.*"

253 US at 231 (emphasis added).

The Court's ultimate holding expressly negated the Ohio Supreme Court's conclusion that the referendum could even be submitted to the voters:

> "It follows that the [Ohio Supreme Court] *erred in holding that the State had authority to require the submission of the ratification to a referendum under the state constitution*, and its judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion."

*Id.* (emphasis added). *See also Hawke v. Smith, No. 2*, 253 US 231, 40 S Ct 498, 64 L Ed 877 (1920) (applying *Hawke No. 1* to Ohio's attempt to submit Nineteenth Amendment to voters for referendum); *National Prohibition Cases*, 253 US 350, 386, 40 S Ct 486, 64 L Ed 946 (1920) (relying on *Hawke No. 1* for proposition that "[t]he referendum provisions of state constitutions and statutes cannot be applied, consistently with the Constitution of the United States, in the ratification or rejection of amendments to it").[9]

The Court of Appeals here correctly noted that *Hawke No. 1* also held that "Legislatures," as used in Article V, referred to the representative body of the state rather than its lawmaking power. 295 Or App at 502 n 5; *see Hawke No. 1*, 253 US at 227-28 (discussing meaning of term). As discussed, *Hawke No. 1* drew that conclusion from its holding that ratification involves no state lawmaking, but, rather, the exercise of a delegated federal power. The state legislature has authority to ratify constitutional amendments, not because the state constitution vests the legislature with authority to enact laws, but because Article V specifically grants that particular body the authority to decide whether to ratify.

---

[9] Plaintiffs have attempted to distinguish *Hawke No. 1* by asserting that it applies only "where the action to be taken by the state is merely a binary 'yes or no' decision that involves no drafting of legislation." *Hawke No. 1* nowhere drew any such distinction, either explicitly or implicitly. Its holding was based on the source of the authority—Article V of the United States Constitution, not the state constitution. Plaintiffs' proposed distinction would also fail to explain why Congressional drafting of a proposed constitutional amendment—which definitionally is far more than "a binary 'yes or no' decision"—is not lawmaking under Article I of the United States Constitution. *See also* Arthur Earl Bonfield, *Proposing Constitutional Amendments by Convention: Some Problems*, 39 Notre Dame Law 659, 662 (1964) ("The process of *proposing* amendments contemplates a conscious weighing and evaluation of various alternative solutions to the problems perceived." (Emphasis in original.)).

The Maine Supreme Court had reached the same conclusion even before *Hawke No. 1* had been decided:

> "Here again, the State Legislature in ratifying the amendment, as Congress in proposing it, is not, strictly speaking, acting in the discharge of legislative duties and functions as a law making body, but is acting in behalf of and as representative of the people as a ratifying body under the power expressly conferred upon it by Article V. The people through their [United States] Constitution might have clothed the Senate alone, or the House alone, or the Governor's Council, or the Governor, with the power of ratification, or might have reserved that power to themselves to be exercised by popular vote. But they did not. They retained no power of ratification in themselves but conferred it completely upon the two Houses of the Legislature, that is the Legislative Assembly."

*Opinion of the Justices*, 118 Me 544, 546-47, 107 A 673 (1919). Similarly, the Colorado Supreme Court has held:

> "In ordinary legislative matters, the general assembly, of course, derives its power from the people of the state, and the people may reserve to themselves any power they desire, but in the matter of the ratification of a proposed amendment to the federal Constitution, the general assembly does not act in pursuance of any power delegated or given to it by the state Constitution, but exercises a power which it possesses by virtue of the fifth article of the Constitution of the United States."

*Prior v. Noland*, 68 Colo 263, 268-69, 188 P 729 (1920).

While *Hawke No. 1* explained that ratification is the exercise of a federal power and not state lawmaking, two years later the Court confirmed that the exercise of that federal power cannot be limited or abridged by the state constitution. In *Leser v. Garnett*, 258 US 130, 42 S Ct 217, 66 L Ed 505 (1922), the underlying question was whether the Nineteenth Amendment (the women's suffrage amendment) had been validly adopted. It had been argued that the requisite number of states had not ratified the proposed amendment, because "[t]he legislatures of five States, Missouri, Tennessee, West Virginia, Texas and Rhode Island, were, by the provisions of their respective state constitutions, expressly forbidden to adopt amendments of the character

of the Nineteenth, and were therefore incompetent to ratify that amendment." *Id*. at 135. The Court rejected the contention. Ratification of a federal constitutional amendment is the exercise of a purely federal power, granted by the federal constitution, and it cannot be abridged by state law:

> "The argument is that by reason of these specific provisions the legislatures were without power to ratify. But *the function of a state legislature in ratifying a proposed amendment to the Federal Constitution*, like the function of Congress in proposing the amendment, *is a federal function derived from the Federal Constitution; and it transcends any limitations sought to be imposed by the people of a State*."

*Id*. at 137 (emphases added; citations omitted). *See also Walker v. Dunn*, 498 SW2d 102, 103, 105-06 (Tenn 1972) (provision of Tennessee Constitution purporting to prohibit legislature from voting on ratification of federal constitutional amendment until after elections had next been held was invalid interference with state legislature's exercise of federal power under Article V).

As recently as 2015, the United States Supreme Court reaffirmed the principle that ratification of a constitutional amendment does not involve exercise of the state lawmaking power. In *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 US 787, 135 S Ct 2652, 192 L Ed 2d 704 (2015), the Court considered whether the people of Arizona could, by initiative, take the redistricting power from the state legislature and vest it in an independent commission consistent with the Elections Clause (United States Constitution, Article I, section 4, clause 1). In concluding that it could do so, the Court summarized its prior decision in *Hawke No. 1*:

> "[In *Hawke No. 1*,] we held that 'ratification by a State of a constitutional amendment is not an act of legislation within the proper sense of the word.' 253 US at 229. Instead, Article V governing ratification had lodged in 'the legislatures of three-fourths of the several States' sole authority to assent to a proposed amendment. *Id*., at 226. The Court contrasted the ratifying function, exercisable exclusively by a State's legislature, with 'the ordinary business of legislation.' *Id*., at 229."

576 US at 806.

We also note that the Massachusetts Supreme Judicial Court has held that a state application for a federal constitutional convention is not lawmaking. Presented with the question whether a legislative resolution applying for a federal constitutional convention required the signature of the Governor, the court held that it did not. *See Op. of Justices to Senate*, 373 Mass 877, 878-79, 366 NE2d 1226, 1227-28 (1977) (relying, in part, on *Hawke No. 1* and *Leser*, court held that "the word 'Legislatures' in the application clause [of Article V] *** does not mean the whole legislative process").[10]

More recently, in *American Federation of Labor v. Eu*, the Supreme Court of California, citing *Hawke* and other authorities, concluded that "when Article V refers to an application by the 'Legislatures' of two-thirds of the states, calling for a constitutional convention, it refers to the representative lawmaking bodies in those states. Any application directly by the people, through their reserved legislative power, would not conform to Article V." *American*

---

[10] Cyril F. Brickfield, a commentator, concurs that the legislature's authority to apply for a federal constitutional convention does not involve exercise of the state lawmaking power. In his *Problems Relating to a Federal Constitutional Convention*, an expanded version of his doctoral thesis that was published by the United States House of Representatives' Committee on the Judiciary in 1957, Brickfield concluded that state legislatures, in calling for a federal constitutional convention, are exercising an Article V power and not the state authority to make laws:

> "Legislatures, in calling upon Congress to convene a convention, would not seem to be acting in the exercise of a lawmaking power but as agencies of the Federal Government, discharging a particular duty in the manner which the Constitution requires. The matter of a Federal constitutional convention pertains exclusively to Federal affairs—not State domestic issues—and State legislatures, in soliciting the Congress, would be acting as representatives of the people of the State under the power granted by article V. The article therefore imports a function different from that of lawmaker and renders inapplicable the conditions which usually attach to the making of State laws."

*Id*. at 10-11 (footnote omitted, citing *Hawke No. 1*); *see id*. at 11 (noting *Hawke No. 1*'s statement that ratification does not involve legislation: "By the same reasoning, it would follow that the application process [for a federal constitutional convention], like ratification, would fall within the same category as a select proceeding under article V."); *see also* Cyril F. Brickfield, *State Applications Asking Congress to Call a Federal Constitutional Convention* 2 (1961) ("The Supreme Court, while never directly deciding, has indicated that in matters pertaining to the amending process, the assent of State Governors is unnecessary because the State legislatures are performing a Federal function—clearly different from State lawmaking." (Footnote omitted; citing *Hawke No. 1*.)).

*Federation of Labor*, 36 Cal 3d at 703, 206 Cal Rptr at 100, 686 P2d at 620. Similarly, the Supreme Court of Oklahoma, citing *Hawke No. 1*, held that a proposed state initiative to force the state legislature to apply for a federal constitutional convention "is facially violative of Article V. The law is plain that the application for a convention must come from the Legislature * * *, not from the people through exercise of their initiative power." *Initiative Petition No. 364*, 1996 OK 129, ¶ 9, 930 P2d at 191.

## III.   CONCLUSION

As we have explained, the voters did not intend the initiative power reserved to the people under Article IV, section 1, of the Oregon Constitution to extend beyond state lawmaking. On its face, IP 5 sought to apply for a federal constitutional convention under Article V of the United States Constitution. The application plainly does not involve state lawmaking. Thus, IP 5 was not authorized under Article IV, section 1(2)(a), of the Oregon Constitution.

For the reasons discussed, the Secretary of State correctly declined to certify IP 5. The trial court properly granted judgment on the pleadings, and the Court of Appeals correctly affirmed.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

APPENDIX

INITIATIVE PETITION 2016-005

**Oregon We the People Initiative**

**Whereas:**

- Decisions by the U.S. Supreme Court have equated spending money in elections with speech and granted corporations the constitutional rights of the People, permitting the wealthy to buy enormous influence in our government through uncontrolled political spending. This undermines the aspirations of Oregonians to a true democracy with a level playing field.

- Corporations, including for-profit and non-profit organizations, unions, and other artificial legal entities, are created under state laws. There is no mention of these entities in the Constitution.

- Money is property, not speech. Its unregulated use for political purposes creates unequal access to political power and influence. Money contributed or spent for political purposes should he subject to regulation.

**Therefore:**

(1)  We the People of the state of Oregon, with the legislative power retained by us under the Oregon Constitution (including Article IV, Section 1, and Article II, Section 18), hereby call for an Article V Convention by enacting into law this Application, in accordance with Article V of the U.S. Constitution, for the specific and exclusive purpose of considering a Constitutional Amendment consistent with the following principles:

(a)  Corporations Are Not People.  Artificial entities, such as corporations, unions and non-profit corporations, established by the laws of any State, the United States, or any foreign state, shall have no constitutional rights and shall be subject to regulation by the People, through Federal, State or Local law. Nothing in this clause shall be construed to

limit the rights of the People as specified in the U.S. Constitution and its Amendments.

(b)   Money is Not Speech.   Money is property and shall not be construed as speech. The People, to ensure a level playing field for all people regardless of their economic status, empower and direct Federal, State, and Local governments to regulate, limit or prohibit the contribution and spending of money for political purposes and to require full and prompt public disclosure of all such transactions.

(2)   This measure constitutes a continuing application in accordance with Article V of the Constitution of the United States, until at least two-thirds of the legislatures of the several states have made similar applications pursuant to Article V.

(3)   A copy of this initiative shall be transmitted to the President of the United States; to each member of the Oregon Congressional Delegation; to the presiding officers of the U.S. Senate and House of Representatives; to each Governor and presiding office of each legislative body of each of the United States.

(4)   This Application shall be codified in Title 17 of Oregon Revised Statutes.